UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROSEANNE M. CURRIER,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **No. 11-2208** |
| **ENTERGY SERVICES, INC., et al.**<br>    **Defendant**s | **Section "E"** |

ORDER & REASONS

Before the Court is a motion to dismiss filed by Defendants Entergy Services, Inc. and Oliver Trowbridge (the "Entergy Defendants"), which Plaintiff Roseanne M. Currier opposes.[1] For the following reasons the motion is **GRANTED** in part and **DENIED** in part.

BACKGROUND

In 2005, Currier began work as a corporate jet pilot for Entergy. In 2010, she experienced problems while training on the Bombardier Challenger 300 flight simulator and requested an additional simulator run for a variety of reasons, including "to ensure that her performance was not hindered by any possible residual problem from a hand injury she had received while working as a pilot over 20 years previously."[2] She received the additional run, was certified on the new aircraft, and acted as a pilot on five flights for Entergy before her annual performance review.

At the annual review, Currier's mention of her old hand injury came up, and her

---

[1] R. Docs. Nos. 18, 25, 31.

[2] R. Doc. No. 3, ¶ 16.

1

supervisor decided it was an operational safety issue.  He grounded her on September 2, 2010, after which she performed office work.  Wishing to return to flight status, she found an expert in hand surgery and he issued her a new first class medical certificate, qualifying her to fly.  Entergy's in-house physician also cleared her to fly.

On October 6, 2010, Entergy's aviation manager Oliver Trowbridge nevertheless contacted the FAA and asked for its evaluation of Currier's hand and any impact it might have on her physical fitness for flight.  Currier alleges that the letter contains a number of false representations intended to induce the FAA to investigate her, because the Entergy Defendants disliked her for certain workplace safety and ethics complaints she made in 2008.

On October 7, 2010, Currier's counsel contacted Entergy to advise the company that she had obtained representation and wished to be returned to flight status.  The same day, the FAA issued a letter to Currier asking for more information in order to establish her medical qualifications to fly.  The FAA also issued her a "PI number," "which would both serve as a tracking number for any future information and correspondence on this issue with the FAA, but would also serve as a red flag to any future employers that Capt. Currier had some unusual medical issue which required further investigation by the FAA."[3]

On October 21, 2010, Steve Griffith, outside counsel for Entergy, and Alan Smith of Entergy Ethics, met with Currier to follow-up on the ethics complaint she had made because of what she believed was her supervisors' spurious focus on her old hand injury. Griffith knew Currier was represented at the time of the meeting.  He is alleged to have

---

[3]    R. Doc. No. 3, ¶ 32.

"questioned Capt. Currier aggressively concerning purported over 'emotionality' at [the] Bombardier [simulator], while not particularly focusing on the hand functionality issue."[4] A similar meeting allegedly occurred on October 27, 2010, and Currier asserts that both occurred in violation of Louisiana Rule of Professional Conduct 4.2, which states: "Unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order, a person the lawyer knows to be represented by another lawyer in the matter . . . ."

Later the same day of the second meeting, Currier was put "on paid leave effective immediately to end the humiliation and embarrassment by the menial job[s]" she had been assigned while off flight status.[5] On November 20, 2010, the FAA's Regional Flight Surgeon wrote to Currier, advising her that she could maintain her First Class Medical Certificate in light of the evaluation of her hand by the specialist she had seen. On December 10, 2010, Currier met with human resources personnel from Entergy and was told that their internal investigation had found no evidence to support her claims of discrimination or retaliation, but that she would remain "grounded because of emotionality pending a psychiatric examination."[6] Currier alleges this is the first time that concern about her mental status was given as the reason for grounding her.

While she was successfully completing ongoing training to maintain her eligibility to fly as a captain, Currier's counsel reached an agreement with Entergy for her to submit to a mental fitness examination by a neuropsychologist and a forensic psychiatrist. The

---

[4] R. Doc. No. 3, ¶ 33.

[5] R. Doc. No. 3, ¶ 37.

[6] R. Doc. No. 3, ¶ 39.

forensic psychiatrist advised her that she had failed a test called "Cogscreen" and was therefore no longer medically clear to fly. In his opinion, she failed this test because of "the pressure applied to her over time by Entergy Aviation Management, which resulted in stress sufficient to produce poor performance."[7] A course of treatment with another neuropsychologist was prescribed, which Currier was unable to complete because her then current level of stress made the work futile.

Entergy informed Currier that she would have to take short term, and if necessary, long term disability leave while attempting to remedy the problems that caused her to fail the Cogscreen test. She alleges that this constituted sex discrimination, as male pilots were not required to take disability leave while completing diagnosis and treatment for conditions with an effect on their flight status. After filing an additional ethics charge with Entergy, Currier filed a complaint with the EEOC alleging perceived disability discrimination, sex discrimination, and retaliation. After receiving a right-to-sue letter, she commenced this action where she asserts the same (asserting perceived disability discrimination and sex discrimination under both federal and state law), in addition to claims for fraud, abuse of right, and intentional infliction of emotional distress.

## ANALYSIS

The Entergy Defendants assert that Currier's complaint must be dismissed because: (1) she has failed to allege an adverse employment action sufficient to state a claim under the Americans With Disabilities Act ("ADA"), Title VII, or the Louisiana Employment Discrimination Law ("LEDL"); (2) her LEDL claim must fail because she has not alleged

---

[7] R. Doc. No. 3, ¶ 45.

perception of a disability that "substantially limits a major life function"; (3) she has failed to allege a retaliatory action under Title VII; (4) the allegations in her complaint do not rise to the level of the extreme and outrageous conduct sufficient to state a claim for intentional infliction of emotional distress; (5) her fraud claim fails because she does not allege she was damaged by the allegedly fraudulent statements; and (6) she has failed to state claim for abuse of right.

The Entergy Defendants are incorrect that Currier has failed to allege sufficiently extreme and outrageous conduct in support of her claim for intentional infliction of emotional distress. While it is true that "[c]onduct which is merely tortuous [sic] or illegal does not rise to the level of being extreme and outrageous" and "the employer's conduct must be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry," there is no question that Louisiana law "recogniz[es] a cause of action for intentional infliction of emotional distress in a workplace setting."  *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1025–27 (La. 2000). Where an employer's actions constitute "a pattern of deliberate, repeated harassment over a period of time" and "the distress suffered by the employee [is] more than a reasonable person could be expected to endure," the employee has a cause of action. *Id.*  Currier has alleged a pattern of deliberate actions, taken over a period of time, designed to manufacture questions—and, because of the stress of those questions, ultimately legitimate concerns—about her mental fitness to fly.

This is not a case where an employee attempts to use an intentional infliction of emotional distress claim to interfere with her employer's freedom "to demote, transfer, discipline, [or] terminate" her. *Griffith v. Louisiana*, 808 F. Supp. 2d 926, 935 (E.D. La.

2011). Absent some freely bargained for contractual condition, Entergy was free to fire her. It does not follow that Entergy was also free to give itself a reason to fire her by, according to the allegations in the complaint, a sustained campaign of harassment that involved false statements to the FAA, humiliating work assignments, shifting explanations for the grounding, disclosure of her private medical details to co-workers, and the like.[8]

The cases the Entergy Defendants cite in support of their motion to dismiss concern routine, if no doubt distressing, decisions by employers such as to fire or reassign workers, to evaluate them unfavorably, or to require difficult, perhaps even pointless additional training or work. Currier's case is closer to that of *King v. Bryant*, 822 So. 2d 214, 218–20 (3d Cir. 2002), where the Court of Appeals reversed the trial court's conclusion that an employer's exacerbation of an employee's medical condition to force her out was not extreme and outrageous. Indeed, it may be worse. If the allegations in Currier's complaint are to be believed, the Entergy Defendants used a campaign of harassment to manufacture a medical condition that has left Currier without the ability to practice her trade.[9] They did so through humiliation "so outrageous that civilized society should not tolerate it." *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1145 (5th Cir. 1991) (holding conduct extreme and

---

[8] R. Doc. No. 3, ¶ 26 (disclosure of private medical information), ¶ 30 (false statements to the FAA), ¶ 36 (apparent recognition by employer of humiliating work assignments), ¶ 39 (shifting explanations for grounding).

[9] R. Doc. No. 3, ¶ 45 ("Both Dr. Altman and one or more subsequent treating mental health and/or medical professionals have taken the position that the intentional actions by [the Entergy Defendants], such as the misguided grounding of Capt. Currier based on [a] 20 year old fully recovered hand injury, fraudulent reporting to the FAA, her assignment for a signification period of time to menial duties, and retaliatory rating on her performance appraisals, as well as all other actions taken by any employee or agent of Entergy . . . were a primary cause of Capt. Currier's poor performance on the Cogscreen.").

outrageous where an employer "unwilling to fire [the employee] outright, *intentionally* and *systematically* set[s] out to humiliate him in the hopes that he would quit").[10]

The Entergy Defendants are also wrong to suggest that Currier has insufficiently pleaded her claim for fraud. Even if Currier came close to securing substantially similar employment even after the allegedly fraudulent letter to the FAA resulted in an assignment of a PI number to her, she still alleges that the PI number would "serve as a red flag to any future employers."[11] A PI number that makes it more difficult to obtain future employment is still an injury, even if it does not actually preclude future employment. In any event, Currier has also alleged that the fraud caused her mental anguish, lost or diminished reputation, and loss of medical certification as a pilot, each of which is an injury sufficient to assert a claim for fraud.[12]

Currier has also adequately pleaded her abuse of right claim. She asserts "Entergy had the right, and even a duty, to investigate the complaints by Capt. Currier" but then abused that right by exercising it in a way that violated the Louisiana Rules of Professional Conduct "to allow aggressive ex parte questioning by a trained litigator of a lay person who

---

[10] The Entergy Defendants cite this case as supporting their proposition. Given that Currier has alleged harassment via reassignment to menial jobs far beneath her qualifications—exactly the conduct held to be extreme and outrageous in *Wilson*—their reliance on this case without providing appropriate context comes perilously close to an attempt to mislead the Court.

[11] R. Doc. No. 3, ¶ 32.

[12] The Entergy Defendants seem to acknowledge this. R. Doc. No. 31, p. 16 n. 46 ("To the extent, however, that Ms. Currier has now clarified that she is seeking emotional distress damages for her fraud claim, the Defendants are not seeking to dismiss that portion of her claim at this time.").

was not represented."[13]  It is specious for the Entergy Defendants to argue that Currier cannot both claim Entergy had a right to the investigation while also claiming that the investigation as carried out was an abuse of that right.  All abuse of right cases involve an action that in the abstract is permissible but as performed is not—that is the essence of the claim.  *See Johnson v. KTBS, Inc.*, 889 So. 2d 329, 334 (La. Ct. App. 2004) ("This doctrine applies only when one of the following conditions is met: (1) the predominant motive for exercise of the right is to cause harm; (2) there is no legitimate motive for exercise of the right; (3) exercise of the right violates moral rules, good faith, or elementary fairness; or (4) exercise of the right is for a purpose other than that for which it was granted.").  Currier asserts Entergy had a right to *some* kind of investigation but exercised that right in bad faith and to harm her.  Nothing more is required.

Assuming without deciding the correctness of the Entergy Defendants' contention that a plaintiff may not assert a claim for retaliation based on the same conduct the plaintiff alleges was discriminatory, Currier should be allowed to amend her complaint to detail when she first engaged in the protected conduct of alleging sex discrimination and when she was retaliated against.[14]  And again assuming without deciding the correctness of the Entergy Defendants' contention that Currier's placement on disability leave is not an adverse employment action for purposes of Title VII, the ADA, and the LEDL, Currier should be allowed to amend her complaint to detail any additional adverse employment

---

[13]  R. Doc. No. 3, ¶ 35.

[14]  In her opposition, Currier makes reference to documents outside the pleadings that suggest such an amendment would not be futile.  The Court excludes them, however, as it would be inappropriate to rely on them at the motion to dismiss stage.

actions that have been taken since these motions went under advisement.[15]

## CONCLUSION

For the foregoing reasons, the Entergy Defendants' motion to dismiss is **DENIED** except as to Currier's claim under the LEDL for perceived or "regarded as" disability discrimination, as to which it is **GRANTED**. In order to avoid dismissal of her Title VII, ADA, and other LEDL claims, as well as her retaliation claim, Currier must file an amended complaint by **October 11, 2013**, at **5:00 p.m.**

**New Orleans, Louisiana, this 30th day of September, 2013.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[15] As Currier does not contest the Entergy Defendants' assertion that she has failed to state a claim for perceived or "regarded as" disability discrimination under the LEDL, R. Doc. No. 25, pp. 11–12, the Court grants the motion to dismiss with prejudice as to that claim.