UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROSEANNE M. CURRIER | CIVIL ACTION |
| v. | NO. 11-2208 |
| ENTERGY SERVICES, INC., ET AL. | SECTION "F" |

## ORDER AND REASONS

Before the Court is Steven Griffith's motion for judgment on the pleadings. For the reasons that follow, the motion is DENIED.

## **Background**

This litigation arises out of a corporate jet pilot's claims that her employer, in retaliation for her stance on aviation safety, grounded her without good cause, launched a sham "independent" investigation into a decades-old minor injury, and after FAA-certified physicians once again gave her a clean bill of health, contrived a mental health issue that left her grounded permanently.

On September 2, 2011 Roseanne Currier sued Entergy Services, Inc. (her former employer) and Oliver Trowbridge (Entergy's corporate aviation manager), asserting claims for Title VII and ADA violations, retaliation, intentional infliction of emotional distress, and abuse of right. Currier later added Steven Griffith (the attorney Entergy hired to independently investigate and report on Currier's internal complaints) as a defendant, alleging

1

intentional infliction of emotional distress, fraud, invasion of privacy, and civil conspiracy.[1] The alleged facts of this case are more completely set forth in this Court's March 14, 2014 Order and Reasons, in which the Court granted in part and denied in part Steven Griffith's Rule 12(b)(6) motion to dismiss. Currier v. Entergy Services, Inc., No. 11-2208, 2014 WL 1093687 (E.D.La. Mar. 14, 2014). In granting the motion in part, the Court dismissed the plaintiff's claims against Griffith for intentional infliction of emotional distress, fraud, negligent misrepresentation,[2] and invasion of privacy. The Court denied the motion with respect to the plaintiff's civil conspiracy theory of recovery. Griffith now seeks judgment as a matter of law dismissing the civil conspiracy theory of recovery.

I.

Rule 12(c) of the Federal Rules of Civil Procedure allows a

---

[1] This case was previously assigned to two different Sections of Court, one of which issued rulings on September 30, 2013 on motions to dismiss filed by all three defendants. See Currier v. Entergy Servs., Inc., No. 11-2208, 2013 WL 5506122 (E.D. La. Sept. 30, 3013). After the plaintiff amended her complaint in response to the September 30 Order and Reasons, Griffith filed a second motion to dismiss, which was pending when this matter was transferred to this Section of Court. Currier's remaining claims against the Entergy defendants include abuse of right, ADA claims for harassment and discrimination based on perceived disability, Title VII claims for sex discrimination and retaliation, intentional infliction of emotional distress, and civil conspiracy.

[2] Currier conceded that her negligent misrepresentation claim against Griffith was not plausible.

party to seek judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed.R.Civ.P. 12(c). A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." <u>Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 312 (5th Cir. 2002)(citations omitted).

The standard for deciding a motion for judgment on the pleadings under Rule 12(c) is the same as the one for deciding a motion under Rule 12(b)(6). <u>Gentilello v. Rege</u>, 627 F.3d 540, 543-44 (5th Cir. 2010). "'[T]he central issue [in deciding a motion to dismiss] is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.'" <u>Id.</u> (citation omitted). To survive a Rule 12 motion to dismiss or for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Gonzalez v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009)(quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009))(internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949. "We do not accept as true conclusory allegations,

3

unwarranted factual inferences, or legal conclusions." <u>Plotkin v. IP Axess Inc.</u>, 407 F.3d 690, 696 (5th Cir. 2005)(citation omitted).

II.

*A.*

Griffith (again) seeks dismissal of Currier's solidary liability theory predicated on civil conspiracy. Previously, Griffith targeted the sufficiency of the factual allegations concerning the alleged agreement between him and Entergy. This time, Griffith contends that -- because the Court dismissed all intentional tort claims against him -- Griffith can have no conspiratorial liability as a matter of Louisiana law. Alternatively, Griffith contends that his status as Entergy's agent precludes a theory of personal misconduct necessary to establish a civil conspiracy. The plaintiff counters that Louisiana law does not require that Griffith commit each element of an underlying intentional tort in order to have conspiracy liability. As to Griffith's alternative argument that he was an agent of Entergy such that he could not conspire with Entergy under the single entity doctrine, Currier points out that Griffith's briefing does nothing to clarify the unclear state of Louisiana law on this point. And the Entergy defendants, for their part, do not oppose Griffith's motion "provided that the Court does not ... render any finding that would impair [their] defenses, including without limitation that: (1) they are not vicariously liable for the acts

4

of Mr. Griffith and his acts cannot be imputed to Entergy and (2) they relied on Mr. Griffith's investigation of Plaintiff's complaints in making employment decisions."[3]

*B.*

1. Civil Conspiracy and Substantive Liability

Louisiana Civil Code Article 2324 provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." The Louisiana Supreme Court has explained that Article 2324 "does not by itself impose liability for a civil conspiracy," for "'[t]he actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit *in whole or in part*.'" Ross v. Conoco, Inc., 828 So. 2d 546, 552 (La. 2002)(quoting Butz v. Lynch, 710 So.2d 1171, 1174 (La.App. 1st Cir. 1998)) (emphasis added).[4]

---

[3] Unsurprisingly, Currier agrees that any determination regarding an agency relationship should be avoided.

[4] As this Court previously articulated the legal standard:

> Louisiana does not recognize a distinct cause of action for civil conspiracy, but "[h]e who conspires with another person to commit an intentional and willful act is answerable, in solido, with that person for the damage caused by that act." La. Civ. Code Ann. art. 2324 (2008). The actionable element of a civil conspiracy is the underlying intentional tort committed pursuant to an agreement between the wrongdoers. Able Sec. and Patrol, LLC v. State of Louisiana, 569 F. Supp. 2d 617, 636 (E.D.La. 2008). In Louisiana, a

5

Griffith submits that, because Louisiana does not recognize an independent cause of action for civil conspiracy and no independent tort claims remain against him, he cannot have conspiratorial liability as a matter of law. Currier counters that nothing in the text of Article 2324 requires that the entirety of the actionable element of civil conspiracy, the intentional tort, must be committed by each co-conspirator for solidary liability to attach. The Court agrees.

Embracing Griffith's reading of Article 2324 would betray the text of the code article and would render meaningless the Louisiana Supreme Court's carefully chosen words relative to conspiratorial liability. To be sure, Article 2324 is not itself the source of liability; it is undisputed that an agreement to commit a tort, without more, is not actionable in Louisiana. Rather, the predicate for assigning solidary liability among those who conspire to commit intentional torts is the underlying intentional tort that co-conspirators agree to perpetrate and actually commit *in whole or*

---

    conspiracy may be proven by circumstantial evidence, as "conspirators rarely formulate their plans in ways susceptible of proof by direct evidence." <u>Silver v. Nelson</u>, 610 F. Supp. 505, 517 (E.D.La. 1985)(quoting <u>Thomas v. City of New Orleans</u>, 687 .2d 80, 83 (5th Cir. 1982)). A plaintiff must show an unlawful act and assistance or encouragement that amounts to a conspiracy to commit the underlying tort. <u>Chrysler Credit Corp. v. Whitney Nat. Bank</u>, 51 F.3d 553, 557 (5th Cir. 1995).

<u>See</u> Order and Reasons dated March 14, 2014.

*in part* causing the plaintiff's injury. In other words, the Louisiana Supreme Court simply explained what is logically intuitive: to be liable, in solido, for civil conspiracy, it is not sufficient to prove a mere agreement among co-conspirators to commit an intentional tort. Something more is required: an intentional tort must actually be committed by the co-conspirators, who perpetuate the intentional tort by participating in some act or acts in furtherance ("in whole or in part"). Most fundamental to resolving the present dispute, nothing in Article 2324 or the case literature requires that each co-conspirator equally participate in, let alone wholly commit, each element of the underlying intentional tort.

The Court's understanding of Article 2324 is bolstered by Chrysler Credit Corp. v. Whitney Nat. Bank, 51 F.3d 553, 557 (5th Cir. 1995). There, at trial it was stipulated that the car franchise, Toyota of Jefferson, and its owner, Louis Normand, were liable for conversion of the proceeds of new car sales owed to the floor plan finance company, Chrysler Credit Corp. Id. And the jury had returned a verdict that Whitney Bank conspired with Toyota of Jefferson to convert the proceeds of Toyota's new car sales. Id.[5] Notably, because it was undisputed that TOJ was liable for

---

[5] Chrysler Credit, which provided floor plan financing for new vehicles sold by Toyota of Jefferson, and Whitney Bank, which made personal loans to TOJ's owners and was where TOJ had its general operating account, were the two primary creditors for Toyota of Jefferson. Id. at 554.

7

the intentional tort of conversion, the Fifth Circuit determined that it "need not consider whether Whitney is also liable for conversion." Id. "Instead," the Fifth Circuit noted that it "must uphold the jury verdict, *in toto*, if we find that the evidence is sufficient to support its determination that Whitney conspired with TOJ to convert the proceeds." Id. at 557. Applying Article 2324, the Fifth Circuit held that a reasonable jury could conclude that Whitney assisted or encouraged TOJ to commit the tort of conversion. Id. at 560-61. In short, the Fifth Circuit upheld Whitney Bank's liability for conspiracy to commit conversion and, based on the stipulation that TOJ was liable for conversion, there was no need to consider whether Whitney also was independently liable for the intentional tort of conversion (or any other intentional tort).

Applying this interpretation of civil conspiracy in Louisiana, Griffith's second attempt to dismiss this theory of liability must fail. Griffith's take on civil conspiracy is too cramped and overlooks the intentional tort claims that remain pending.[6]

---

[6]There is a dearth of case literature directly on point, but it is notable that the cases invoked by Griffith fail to support his argument. See Crutcher-Tufts Res., Inc. v. Tufts, 992 So. 2d 1091, 1094 (La. App. 4 Cir. 2008)(holding that the plaintiff's allegation of conspiracy was not actionable without a claim that an agreement existed to commit an actually-committed tortious act); New Orleans Jazz & Heritage Found., Inc. v. Kirksey, 40 So. 3d 394, 408 (La. App. 4 Cir. 2010)("Because the actionable element of the Foundation's action against KEI is not an intentional tort but rather contractual in nature, there is no underlying intentional tort that would support a judgment

Currier's intentional tort claims as alleged against Griffith have been dismissed, but it does not follow that the civil conspiracy theory of solidary liability likewise fails where, as here, it is alleged that Griffith conspired with the remaining defendants to commit the intentional torts that remain viable as alleged against his co-conspirators. Stated another way, it is sufficient that Currier has alleged that Griffith conspired to commit intentional torts (such as abuse of rights) and acted, in whole or (here) in part, with the remaining defendants in perpetuating the actionable element of the conspiracy, which is the alleged intentional tort.

---

imposing liability upon Mr. Kirksey and KEI in solido."); Felder's Collision Parts, Inc. v. Gen. Motors Co., 960 F. Supp. 2d 617, 639-40 (M.D. La. 2013) (finding that a conspiracy claim was not actionable on its own because the plaintiff failed to specifically plead the existence of a conspiracy); Jefferson v. Lead Indus. Ass'n, Inc., 930 F. Supp. 241, 248 (E.D. La. 1996) aff'd, 106 F.3d 1245 (5th Cir. 1997) ("Plaintiff asserts that the underlying tort here is fraudulent misrepresentation.... However, plaintiff's conspiracy to commit fraudulent misrepresentation claim is defective because the underlying fraudulent misrepresentation claim is defective."); Aronzon v. Sw. Airlines, No. 03-394, 2004 WL 57079 (E.D. La. Jan. 9, 2004) ("Since [the plaintiff] cannot establish the substantive offense, he cannot maintain a cause of action for conspiracy to defame."). On the other hand, the plaintiff's position finds support in the case literature as mentioned in Chrysler Credit Corp. v. Whitney Nat. Bank, 51 F.3d 553 (1995). See also, e.g., Tabb v. Norred, 277 So.3d 223, 228 (La. App. 3d Cir. 1973)(a police deputy was shot by one of three youths burglarizing a school, the trial court held that one of the non-shooting co-conspirators was liable, and the appellate court affirmed, holding that "[w]hen a tort is perpetuated through the instrumentality of a combination or conspiracy, the party ... injured may look beyond the actual participants in committing the injury, and join with them, as defendants, all who cooperated in, advised, or assisted in the accomplishment of the common design, for co-trespassers are bound in solido.").

Just like Whitney Bank, if it is proved or stipulated at trial that Entergy is liable for abuse of rights, for example, or some other intentional tort designed to harm Currier, and if it is also proved that Griffith conspired with Entergy (and acted in part to further the relevant intentional tort committed by Entergy), then Griffith may be held liable in solido pursuant to Article 2324.[7]

2. Single Enterprise Doctrine

Griffith advances an alternative argument for dismissing Currier's conspiracy claim, apparently inspired by this Court's March 14 Order and Reasons.[8] He invokes the intracorporate

---

[7] Of course, if the intentional torts are dismissed later on summary judgment, then there can be no solidary liability based on Article 2324 because the actionable element of the conspiracy (the intentional tort) will be absent.

[8] The Court previously observed:
> [C]ourts have held that employees or agents are legally incapable of conspiring with their employers or principals because in many cases the law considers principals and their agents to be single entities incapable of conspiring with each other. See Rhyce v. Martin, 173 F. Supp. 2d 521, 532-533, 536 (E.D. La. 2001)(Clement, J.)(discussing the single entity theory in the context of 42 U.S.C. § 1985, 42 U.S.C. § 1986, and Sherman Antitrust claims). The question of whether or not agents and related principals may conspire with each other to create solidary liability under Louisiana Civil Code article 2324 remains unsettled. Id. at 536.
> ...
> And, the parties' papers have not assisted the Court such that it might find as a matter of law whether Griffith acting as Entergy's agent is legally capable of conspiring with Entergy under the Louisiana Civil Code. But, just as the plaintiff cannot rest on conclusory allegations unsupported by facts, the defendant cannot, as he has done, merely suggest that "the allegations do not add up to conspiracy to commit

conspiracy or single enterprise doctrine, which originated in the context of federal antitrust law and simply combines two general common law principles, positing: because (a) a conspiracy requires an agreement between two separate persons and (b) a corporation is capable of acting only through its agents, it follows that (c) a corporation and agent (or parent and subsidiary) are generally incapable of agreeing to conspire. See Hilliard v. Ferguson, 30 F.3d 649, 653 (5th Cir. 1994)(citation omitted). Griffith argues that the unity of interests between Entergy and its agent Mr. Griffith precludes a finding of two separate persons necessary to establish a conspiracy.

There are problems with this argument. First, as this Court previously observed in its March 14 Order and Reasons, and as Griffith concedes, whether or not Louisiana has adopted the single entity doctrine in this context remains, at best, unsettled. See, e.g., Haygood v. Dies, 127 So.3d 1008, 1013 (La. App. 2d Cir. 2013)(failing to address the doctrine but allowing to proceed a conspiracy claim that alleged, among other things, that an owner

---

> intentional torts designed to harm Ms. Currier." In light of the unsettled Louisiana law on the issue, the volume of purported factual allegations in the complaint and exhibits, and the generality with which the defendant approached dismissal of this particular theory of liability, the Court cannot determine as a matter of law that the plaintiff has failed to allege facts sufficient to sustain her theory of solidary liability based on civil conspiracy.

See Order and Reasons 3/14/14 (footnotes omitted).

and his limited liability company had conspired together); <u>St. Landry Homestead Federal Sav. Bank v. Vidrine</u>, 118 So.3d 470 (La. App. 3d Cir. 2013)(explicitly declining to address the issue of single enterprise conspiracy liability); <u>Aucoin v. Kennedy</u>, 335 F. Supp. 2d 830, 845-46 (E.D. La. 2004)(Lemmon, J.)(differentiating between federal civil rights conspiracy claims and Louisiana state law claims, the court dismissed the federal claims under the single enterprise doctrine but declined to dismiss the Louisiana state law claims); <u>Rhyce v. Martin</u>, 173 F. Supp. 2d 521, 535-36 (E.D.La. 2001)(Clement, J)("[a]bsent adequate briefing", the Court was unable to determine whether Louisiana had adopted the doctrine and therefore declined to dismiss on that ground the conspiracy claim alleged by a firefighter against the fire district and its employees). Griffith's briefing here does not advance a solution.[9]

Second, and more fundamental at this stage of the litigation, resolving this issue as a matter of law in favor of Griffith would require that the Court find facts (that Griffith was an agent or employee of Entergy and, as such -- assuming Louisiana would adopt the single entity doctrine -- could not as a matter of law conspire with Entergy). Ultimately, Griffith fails to persuade on both

---

[9]This is not a criticism but more a function of the uncertainty of Louisiana law and its encounter with the common law doctrine Griffith seeks to invoke. Perhaps counsel will convince the U.S. Fifth Circuit Court of Appeals to certify this question to the Louisiana Supreme Court, which may in its discretion, of course, decline to answer.

12

points.

Griffith underscores Currier's allegations that he acted as Entergy's employee or agent, as well as her allegation that Entergy is vicariously liable for Griffith's (among other employees') tortious conduct; Griffith suggests that the "employee or agent" labels erode any attempt by Currier to argue that Griffith had a separation of identity and interests sufficient to have the legal ability to conspire with Entergy to commit the alleged torts designed to harm Currier. But in pouncing on the agency characterization,[10] Griffith ignores the clear import of the many other allegations concerning Griffith in the 79-page amended complaint, as well as Entergy's and Trowbridge's defense that they relied on Griffith's <u>independent</u> investigation of Currier's employment complaints.[11] Griffith has failed to persuade the Court to exercise its <u>Erie</u> guess to resolve this issue of Louisiana law at the pleading stage by cherry-picking labels that Currier uses in her complaint.[12]

---

[10] Notably, Entergy points out, realistically, that the term "agent" can have various meanings depending on the context and usage.

[11] Indeed, beyond the conspiracy allegations, other factual allegations seem inconsistent with the "agent" label Currier attaches to the Griffith-Entergy relationship. See, e.g., paragraphs 33 - 35c of the second supplemental and amended complaint.

[12] To survive a Rule 12 motion to dismiss or for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

13

Accordingly, Griffth's Rule 12(c) motion is DENIED.

New Orleans, Louisiana, September 10, 2014

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

its face.'" <u>Gonzalez v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009)(quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009))(internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949. Currier has done so.