UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ROSEANNE M. CURRIER                          CIVIL ACTION

V.                                           NO. 11-2208

ENTERGY SERVICES, INC., ET AL.               SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court are three motions for summary judgment: (1)
Griffith's motion as to the one remaining claim against him; (2)
Currier's cross-motion as to that same claim; and (3) Trowbridge's
motion for summary judgment as to the claims against him.  For the
reasons that follow, Griffith's motion is GRANTED, and thus
Currier's cross-motion is DENIED.  Trowbridge's motion is GRANTED.
All claims against Griffith and Trowbridge are hereby DISMISSED.

<u>Background</u>

The extensive facts of this case are detailed fully in this
Court's previous Order and Reasons granting in part and denying in
part Griffith's motion to dismiss under Rule 12(b)(6).[1]  This
litigation arises out of a corporate jet pilot's claims that her
employer, in retaliation for her stance on aviation safety,
grounded her without good cause, launched a sham "independent"
investigation into a decades-old minor injury, and after FAA-
certified physicians once again gave her a clean bill of health,
contrived a mental health issue that left her grounded permanently.

---

[1]Dated March 14, 2014.

On September 2, 2011, Ms. Currier sued Entergy and Trowbridge, Entergy's former corporate aviation manager, later adding Griffith, Entergy's outside investigator, as a defendant.[2]   Her claims against Entergy are abuse of right, ADA claims for harassment and discrimination based on perceived disability, Title VII claims for sex discrimination and retaliation, intentional infliction of emotional distress, and civil conspiracy.   She asserts that Trowbridge intentionally inflicted emotional distress on her and conspired with Entergy and Griffith to commit intentional torts.[3] Her remaining claim against Griffith is civil conspiracy.[4]

---

[2]The case was originally assigned to Section L of this Court; the defendants filed Rule 12(b)(6) motions to dismiss.   On September 30, Judge Morgan granted in part, without prejudice, motions to dismiss Entergy and Trowbridge.   See Order and Reasons dated September 30, 2013 (Morgan, J.) (denying Entergy defendants' motion with respect to Currier's intentional infliction of emotional distress, fraud, and abuse of right claims; and granting the motion with respect to Currier's employment discrimination and retaliation claim, but allowing her to re-plead).   She also granted without prejudice Griffith's motion to dismiss.   See Order and Reasons dated September 30, 2013 (Morgan, J.) (granting without prejudice Griffith's motion to dismiss Currier's abuse of right and intentional infliction of emotional distress claims, allowing Currier to file an amended complaint).   Currier filed her second supplemental and amended complaint in October 2013.

[3]Originally, she also brought claims against Trowbridge for fraud and invasion of privacy, but she states in her response to Trowbridge's motion for summary judgment that she no longer pursues those claims.   Those claims are thus dismissed.

[4]She asserted the following claims against Griffith: intentional infliction of emotional distress, fraud or intentional misrepresentation, negligent misrepresentation, invasion of privacy, and civil conspiracy.   This Court dismissed all the claims against Griffith but civil conspiracy.   See Order and Reasons dated March 14, 2014.

Now, Griffith moves for summary judgment as to the one remaining claim against him, that of civil conspiracy. Currier has filed a cross-motion for summary judgment as to the civil conspiracy claim and she also moves for a judgment that Griffith violated Rule 4.2 of the Rules of Professional Conduct. Trowbridge also moves for summary judgment as to the IIED and conspiracy claims against him.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish

an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim.  Id.  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed.R.Civ.P. 56(c)(2).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

## II.

### A. Griffith and Civil Conspiracy

Griffith seeks dismissal of Currier's liability theory predicated on civil conspiracy.  Currier alleges that Griffith conspired with Entergy to commit intentional torts, namely abuse of right and intentional infliction of emotional distress.[5]

Louisiana does not recognize a distinct cause of action for civil conspiracy, but "[h]e who conspires with another person to commit an intentional and willful act is answerable, in solido,

---

[5]At another point in her complaint, Currier alleges that Griffith is solidarily liable with Entergy and Trowbridge for "all of the intentional torts set forth herein."

with that person for the damage caused by that act." LA. CIV. CODE ANN. art. 2324 (2008).  The actionable element of a civil conspiracy is the underlying intentional tort committed pursuant to an agreement between the wrongdoers.  Able Sec. and Patrol, LLC v. State of Louisiana, 569 F. Supp. 2d 617, 636 (E.D. La. 2008). In Louisiana, a conspiracy may be proven by circumstantial evidence, as "conspirators rarely formulate their plans in ways susceptible of proof by direct evidence." Silver v. Nelson, 610 F. Supp. 505, 517 (E.D. La. 1985) (quoting Thomas v. City of New Orleans, 687 F.2d 80, 83 (5th Cir. 1982)).  A plaintiff must show an unlawful act and assistance or encouragement that amounts to a conspiracy to commit the underlying tort.  Chrysler Credit Corp. v. Whitney Nat'l Bank, 51 F.3d 553, 557 (5th Cir. 1995).  In related contexts, courts have held that employees or agents are legally incapable of conspiring with their employers or principals because in many cases the law doctrinally considers principals and their agents to be single entities incapable of conspiring with each other.  See Rhyce v. Martin, 173 F. Supp. 2d 521, 532-533, 536 (E.D. La. 2001) (Clement, J.) (discussing the single entity theory in the context of 42 U.S.C. § 1985, 42 U.S.C. § 1986, and Sherman Antitrust claims).  The question whether or not agents and related principals may conspire with each other to create solidary liability under Louisiana Civil Code article 2324 remains unsettled.  Id. at 536.

5

Currier bases her conspiracy claim on several allegations: (1) Griffith and Entergy's in-house counsel conducted interviews with the plaintiff without her counsel; (2) during these meetings, Griffith acted aggressively, in a manner intended to elicit an emotional response that could be used as an excuse to inquire into Currier's mental health; (3) according to Griffith's own report, Entergy's in-house counsel was closely involved in the entire internal investigation; (4) Griffith's report contained some of the same misrepresentations that appeared in the Entergy letter to the FAA asking for their assistance in investigating Currier's physical injury; (5) Griffith's report contained many intentional misrepresentations that Entergy then used to justify grounding the plaintiff; (6) Griffith and Entergy employees obtained Currier's medical records and possibly solicited opinions about her mental health by speaking with Dr. Rabito even after he sent a letter of findings clearing her for flight duty; (7) Griffith's report does not seriously address the substance of Currier's ethics complaint, but focuses almost entirely on her own character; and (8) Entergy used the Griffith report to prejudice the evaluating psychiatrist as to Currier's mental state.

Griffith responds that Currier has no evidence to establish (a) the existence of a conspiracy, (b) that Griffith knowingly agreed to join any conspiracy, (c) that Griffith agreed to the intended outcome or unlawful or tortious result of the conspiracy,

or (d) that Currier sustained injury from the allegedly conspired act. The sole issue is whether Griffith knowingly and intentionally agreed to join a conspiracy with Entergy to intentionally inflict emotional distress upon Currier or to abuse its rights and intended that outcome.

This Court cannot find that there is a genuine issue of material fact regarding Currier's conspiracy claim against Griffith. "[O]nly evidence–not argument, not facts in the complaint–will satisfy" the nonmoving party's burden to show a genuine issue of material fact. Solo Serve Corp. v. Westowne Assoc., 929 F.2d 160, 164 (5th Cir. 1991). Despite the extensive discovery in this bitter three-year-old case, there is no evidence that a conspiracy existed, that Griffith knowingly agreed to join it, or that he agreed to the intended outcome of the conspiracy. Griffith was hired as an outside investigator to look into Currier's complaint, an investigation that was required by law. Entergy gave Griffith unrestricted access to the witnesses and documents to conduct his investigation, as was to be expected, and did not indicate what conclusions to reach, or, on this record, otherwise suggest any desired outcome of his investigation. Currier testified and has admitted that the existence of the conspiracy was simply her own personal belief. Patently, not enough to sustain a claim against Griffith. See Bickerstaff v. Whitney Nat'l Bank, 99 F.3d 1135 (5th Cir. 1996) (summary

7

calendar), 1996 WL 595654, at *3.  Rather than direct this Court to admissible summary judgment evidence sufficient to satisfy her burden of proof on each element of conspiracy, the plaintiff lists several generalized assertions that she contends constitute sufficient "circumstantial evidence" to deny summary judgment.  The record before the Court is barren of her assertions.  Currier complains about various aspects of Griffith's investigation and report, but whether he should have researched certain issues more or included or excluded certain facts from his report falls far short to support a claim of conspiracy to commit intentional infliction of emotional distress or abuse of rights.  This Court cannot infer conspiracy where the evidence does not support such a claim.

For the same reasons, Currier's cross-motion on the conspiracy claim against Griffith fails.

### B. Griffith and Rule 4.2

Currier moves for a judgment that Griffith violated Rule 4.2 of the Louisiana Rules of Professional Conduct by interviewing Currier without her counsel's presence or consent.  Rule 4.2 states, "Unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order, a lawyer in representing a client shall not communicate about the subject of the representation with . . . a person the lawyer knows to be represented by another lawyer in the matter."  Griffith contends

8

that the plaintiff's request must be denied because there is no cause of action under Rule 4.2, Rule 4.2 does not apply because Griffith was working as an outside investigator, and even if it did, Griffith had consent to speak with Currier without her counsel because her counsel knew about the meetings but chose not to attend.[6]

Currier recognizes that there is no Rule 4.2 claim within the meaning of Federal Rule of Civil Procedure 56, but she suggests that resolution of this issue may impact the exclusion or limitation of evidence at trial.  Such evidentiary issues, if applicable, are more appropriately addressed in a motion in limine.[7]

Moreover, Griffith contends that Rule 4.2 does not apply when an attorney acts as an investigator rather than as an attorney.  Ryland v. Taylor, Porter, Brooks & Phillips, 496 So. 2d 536, 541-42 (La. Ct. App. 1st Cir. 1986) (finding no ethics violation without

---

[6]This Court does not reach whether Griffith had consent to speak with Currier, because the Rule 4.2 request is flawed in other ways. It seems questionable, however, that Griffith is correct in contending that an attorney would be required to intervene in the opposing counsel's attempt to violate Rule 4.2 for that rule to be violated.

[7]Magistrate Judge Wilkinson refused to exclude recorded interviews based on an alleged Rule 4.2 violation, finding that "[a]n exclusionary policy frustrates truth and does not punish the ethical violation, but works against the client . . . . An ethical violation ought to be dealt with by sanctions against the errant attorney."  In re Katrina Canal Breaches Consl. Litig., 2008 WL 2066999 (E.D. La. May 14, 2008).

proof of some overt act that only an attorney would undertake).  If the ethics rules do apply, Griffith suggests that Mr. Hyatt, Currier's counsel, may have to withdraw from the case if his consent to communications is at issue.  Rather than parse out this unseemly issue, this Court denies the request for a judgment that Griffith violated Rule 4.2, because the Rule simply does not give rise to an independent claim, and any evidentiary issues should be addressed in a proper evidentiary motion.

### C. Trowbridge and Civil Conspiracy

Trowbridge moves for summary judgment as to the civil conspiracy claim against him.  First, Trowbridge asks this Court to find as a matter of law that Trowbridge cannot conspire with his employer Entergy under the single entity doctrine.  Although this argument is persuasive, for largely the same reasons given in this Court's previous Order and Reasons denying Griffith's motion for judgment on the pleadings,[8] this Court declines to rule as Trowbridge wishes without guidance from the Louisiana Supreme Court on this disputed issue of state law.

Alternatively, Trowbridge contends that Currier has come forward with no evidence that gives rise to an issue of material fact as to whether he entered into an agreement to commit a

---

[8]Dated September 10, 2014.

tortious act or whether he intended that act's result or outcome.[9] This Court agrees.   In her statement of material facts, Currier generally, once again, asserts, without citing the record, that "the totality of the circumstances and actions by Mr. Trowbridge show agreement to the conspiracy."  Trowbridge highlights that the entire section of Currier's opposition alleging that Trowbridge was a co-conspirator is devoid of citation to evidence.   This Court cannot rely on nothing but "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."  Pioneer Exploration, LLC v. Steadfast Ins. Co., 767 F.3d 503, 511 (5th Cir. 2014).   This record is replete with angry allegations, but at no point does Currier allude to evidence of an agreement to commit a tortious act or an agreement as to that act's intended outcome.  See Raz v. Oaks, No. 02-30054, 2002 WL 31049485, at *3 (5th Cir. Sept. 5, 2002) ("Raz's passing references to the private defendants in his brief are mere conclusions and speculation about the broad and pervasive conspiracy Raz believes is targeting him.").  The civil conspiracy claim against Trowbridge fails.

---

[9]Trowbridge notes that Currier fails to address uncontested fact 26: "There is no evidence that Trowbridge intended to cause Currier severe emotional distress."  Under Local Rule 56.2, this omission constitutes an admission by Currier.  For the sake of completion, the Court will nonetheless consider Currier's contentions on the issue.

*D. Trowbridge and Intentional Infliction of Emotional Distress*

Finally, Trowbridge moves for summary judgment as to the intentional infliction of emotional distress claim.  An IIED claim requires a showing that: (1) the defendant's conduct was extreme and outrageous; (2) the plaintiff's emotional distress was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially likely to result from his conduct.  <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 563 (5th Cir. 2007).  Trowbridge contends that the evidence fails to give rise to a genuine issue of material fact as to any of these elements.  This Court agrees.  This record fails to show that the defendant's conduct was extreme and outrageous, and for this reason, finds it unnecessary to reach the other elements.

Extreme and outrageous conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." <u>Id.</u>  Currier contends that Trowbridge caused her severe emotional distress by sending the letter to the FAA, speaking with Dr. Rabito, grounding her, and assigning her certain administrative duties.

Currier claims that Trowbridge's letter to the FAA and his speaking with Dr. Rabito form part of his "extreme and outrageous conduct."  The Court does not find that Trowbridge's request for

12

information from the FAA showing that Currier's hand injury did not pose a problem–especially when Currier initially blamed her flight issues on her old hand injury–is inappropriate.  Trowbridge asked Currier to obtain such documentation, and when she did not do so, he attempted to do so himself.  His conversation with Dr. Rabito about Currier's ability to fly is similarly not "beyond all possible bounds of decency."

While grounded, Currier was assigned various tasks, such as Xeroxing, collecting newspapers at the front gate, and entering bills.  Currier described this as "not in keeping with what pilots do" and "like being a janitor," though she did admit that these tasks could be part of a pilot's collateral duties.  She found this work to be demeaning because she had to do it in front of her colleagues, board members, and regular passengers, who would ask why she was not flying.  She performed these collateral tasks for 20-40 minutes each day, and the rest of her day was spent "staring at the walls."  When she complained about the nature of her work after six weeks, she was permitted to take leave, and with full pay.

Currier likens her situation when grounded to that of the employee in Wilson v. Monarch Paper Co., 939 F.2d 1138 (5th Cir. 1991).  There, an executive manager was demoted to an entry level warehouse supervisor, and his primary duty became housekeeping chores, including "cleaning up after the employees in the warehouse

13

cafeteria during their lunch hour." 939 F.2d at 1145. He spent seventy-five percent of his time performing these "menial, janitorial duties." Id. Unlike Wilson, the Court must underscore, Currier retained her title and salary, and was temporarily assigned collateral duties consistent with those assigned to other pilots and even to herself before her grounding. See Ramirez v. Allright Parking El Paso, Inc., 970 F.2d 1372, 1377 (5th Cir. 1992) (distinguishing Wilson because although the plaintiff in Ramirez was demoted from a supervisor to a parking lot attendant, his salary remained intact and his duties as an attendant "were basic duties that all parking lots attendants were required to perform, . . . [were] duties that [the defendant] required its other supervisors to do on occasion, and, indeed, were duties that [the defendant] had often called upon [the plaintiff] to do himself before his demotion"). Her change in employment conditions while grounded is not "extreme and outrageous" as to support an IIED claim. Thus, this claim fails.

### III. Conclusion

For the aforementioned reasons, IT IS ORDERED that Griffith's motion for summary judgment is hereby GRANTED, and in turn Currier's cross-motion on the same issue is DENIED. Currier's request for a judgment finding that Griffith violated Rule 4.2 is DENIED. The sole remaining claim against Griffith is thus DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Trowbridge's motion for summary judgment is GRANTED, and all claims against him are hereby DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, November 19, 2014

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE