UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROSEANNE M. CURRIER | CIVIL ACTION |
| V. | NO. 11-2208 |
| ENTERGY SERVICES, INC. ET AL. | SECTION "F" |

ORDER AND REASONS

Before the Court is Entergy's motion for summary judgment. For the reasons that follow, the motion is GRANTED as to the abuse of right claim, and DENIED as to the sexual harassment and intentional infliction of emotional distress claims.[1]

Background

This litigation arises out of a corporate jet pilot's claims that her employer, in retaliation for her stance on aviation safety, grounded her without good cause, launched a sham "independent" investigation into a decades-old minor injury, and after FAA-certified physicians once again gave her a clean bill of health, contrived a mental health issue that left her grounded permanently.  The extensive facts are laid out in this Court's previous Order and Reasons, dated March 14, 2014.  After more than three years of considerable motion practice and discovery, and dismissal of the claims against the other defendants, this Court has before it the last claims remaining in this lawsuit.

---

[1] The plaintiff no longer pursues her claims for intentional discrimination under the ADA, retaliation, and fraud; these claims are thus summarily dismissed.

1

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim. Id. Hearsay evidence and unsworn documents that cannot

be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

A.

The Court begins by noting that the contours of the plaintiff's sexual harassment claim and Entergy's arguments against it are not clear.  Sexual harassment is a form of sex discrimination. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64-65 (1986). A plaintiff bringing a sexual harassment claim under Title VII must prove: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based upon sex; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action. See McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 563 (5th Cir. 1998) (citing Henson v. City of Dundee, 682 F.2d 897, 903-05 (11th Cir. 1982) (applying these factors to a hostile work environment claim based on sexual harassment)). An employer can be vicariously liable for a supervisor's harassment in two circumstances.  The

first situation, a quid pro quo case, exists when "a supervisor takes a tangible employment action based on, for example, a subordinate's refusal to accede to sexual demands." Vance v. Ball State Univ., 133 S. Ct. 2434, 2448 (2013). This results in strict liability for the employer. Id. The second situation, a hostile work environment case, exists when no such tangible employment action is taken. Id. There, an employer escapes vicarious liability if it can establish, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. Boca Raton, 524 U.S. 775, 807 (1998). This is known as the Ellerth/Faragher defense.[2]

---

[2]The dispute between the parties as to the threshold availability of the Ellerth/Faragher defense shows the uncertainty surrounding this claim. The plaintiff, for example, contends that the defense is unavailable because Trowbridge was her supervisor, when in fact the defense would be unavailable if Trowbridge were not her supervisor. Whether Entergy has the possibility of alleging the defense depends instead on whether Trowbridge took tangible employment action. If he did, Entergy is strictly liable. Assuming that this is a sexual harassment claim and that Trowbridge did not take tangible employment action, the parties then dispute whether Griffith's investigation satisfies the first prong of the Ellerth/Faragher defense and relieves Entergy of liability. Entergy contends that because it hired an outside investigator, Griffith, to look into Currier's complaints, it took "reasonable care to prevent and correct any harassing behavior." But Entergy does not mention the second prong of the affirmative defense, and it does not offer any evidence that might show that Currier "unreasonably failed to take advantage of the preventive or corrective opportunities" that it provided. Both sides' handling

Sexual harassment, however, is not the only form of sex discrimination.  Title VII of the Civil Rights Act prohibits discrimination on the basis of sex generally.  42 U.S.C. § 2000e, et seq.  To establish a prima facie case of discrimination, the plaintiff must show that her employer took adverse employment action motivated by her sex.  See McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007) (applying one version of this general test).[3]  "Adverse employment actions include discharges, demotions, refusals to hire, refusals to promote, and reprimands." Breaux v. City of Garland, 205 F.3d 150, 157 (5th Cir. 2000).  A Title VII plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act. Teamsters v. United States, 431 U.S. 324, 358 (1977).  The central focus is always whether the employer is treating "some people less favorably than others because of their . . . sex." Id. at 335, n.15.  If the plaintiff makes this showing, the burden shifts to

---

of these issues leaves much to be desired.  Their level of professionalism has been disappointing.

[3] See also Alvarado v. Texas Rangers, 492 F.3d 605, 611 (5th Cir. 2007) ("To establish a prima facie case of sex discrimination under Title VII, the parties agree that Alvarado was required to show: (1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably.").

the employer to articulate a legitimate, nondiscriminatory reason for its employment action.  The employer's burden is only one of production, not of persuasion, and it involves no credibility assessment.  If the employer meets this burden, the plaintiff must then prove that the employer's proffered reason is not true but instead is a pretext for the real discriminatory purpose.[4]  McCoy, 492 F.3d at 557.

The plaintiff contends that she was subjected to unwelcome harassment in the form of a few sexist comments by Entergy employees.  She says that Leon, her co-pilot at the Bombardier training, told her that he was unimpressed with female pilots and did not favor their being in the industry; that Trowbridge asked her what she had done as a woman to make her custody litigation so hard fought; and that a then-contract pilot, Frank Chennevert, said that he did not like that women whom he deemed less qualified were given promotions over him.  These comments standing alone are not sufficient for a sexual harassment claim,[5] and the plaintiff does

---

[4]Entergy cites this burden-shifting framework in its arguments about the plaintiff's sexual harassment claim.  Perhaps Entergy, like the Court, views the plaintiff's claim more as one of sex discrimination.  The burden-shifting framework does not appear in cases involving the specific form of sex discrimination that is sexual harassment, nor would it.  It would be impossible for an employer to justify, based on appropriate motives, a supervisor's repeated, unwelcome, sexually explicit comments toward an employee, for example.

[5]In determining whether a work environment is hostile or abusive, the Court must evaluate the totality of the circumstances, including "the frequency of the discriminatory conduct, its

not argue that they are.  Instead, she uses these comments[6] to conclude that the treatment she received at the Bombardier training and her subsequent grounding were motivated by animus or discrimination because of her gender.[7]  A careful reading of the

---

severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).  A few sexist comments, which the Court does not take lightly nor condone, do not, however, rise to the level of a sexual harassment claim.

[6]She adds that Leon, her male colleague, also complained about the safety of a pilot six years before she did and that Entergy did not seek to punish Leon as it did her.  She contends that she and Leon are similarly situated and that the treatment towards her shows that Entergy's conduct was motivated by gender or sex.

[7]The plaintiff characterizes this behavior as sabotage in the workplace, which she believes can constitute sexual harassment because "sexual content is not the Title VII talisman." See Butler v. Ysleta Indep. Sch. Dist., 161 F.3d 263, 270 (5th Cir. 1998). The Fifth Circuit in Butler, quoting the Supreme Court in a non-hostile-environment case, which in turn was quoting a concurrence by Justice Ginsburg in another case, did not hold that behavior divorced from gender can be sexual harassment.  Rather, it found that the workplace in question "while perhaps more sexually charged than necessary, was not sexually charged in a way that made it a hostile environment for either men or women." Id.  The court was not examining the third element of a sexual harassment claim–whether the harassment was based on sex–but rather the fourth element–whether the harassment complained of affected a term, condition, or privilege of employment.
     This Court does not dispute that non-sexual conduct can form part of a sexual harassment claim.  See Betancourt-Esquerdo v. Unión Internacional United Auto Workers, 2006 WL 2387083, *12 (D.P.R. Aug. 17, 2006); O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001).  But the concern in this line of cases is that a court "should avoid desegregating a hostile work environment claim, dividing conduct into instances of sexually oriented conduct . . . and instances of unequal treatment, then discounting the latter category of conduct." Zambrana Santos v. Banco Santander de P.R., 363 F. Supp. 2d 56, 64 (D.P.R. 2005) (emphasis added).  The opposite is the potential here.  This Court finds the non-sexual

7

evidence thus reveals that her claim may not be one of sexual harassment specifically, but, rather, of gender discrimination more broadly.[8]  The parties do not note the distinction between the two, each side arguing various aspects of the two claims.[9]  On this record, the Court believes it improper to find that the defendant has carried its burden on summary judgment as to prevail as a matter of law.[10]

---

conduct in this case far more troubling (in the sense that it is actionable) than the few sex-based remarks.  The Court knows of no successful sexual harassment case, and the plaintiff offers none, where the vast majority of the complained of conduct did not, on its face, concern the plaintiff's sex or gender.  It seems that the record does not lend itself to a sexual harassment claim.

[8]The Court does not mean to definitively rule that the plaintiff's claim is one of sex discrimination.  The Court merely notes that the nature of the claim is not clear and that summary judgment is not appropriate.  The parties are welcome to dispute the characterization of this claim in their trial submissions, should the plaintiff wish to pursue a claim of sexual harassment or should the defendant believe that the plaintiff has waived the ability to allege sex discrimination.  The Court expresses no opinion as to either avenue.  However, it seems reasonable to wonder aloud why competent discovery before all the strands of motion practice has not clarified this issue.

[9]Entergy cites discrimination case law, see supra note 4, while Currier contends that the bulk of her suffered "harassment" concerns employment-related decisions, like her grounding.  Traditionally, sexual harassment is thought of as unwelcome comments and actions that are largely unrelated to the victim's job.  Sex discrimination in the workplace, in contrast, involves employment actions improperly taken on the basis of sex or gender.

[10]The Court, not having had the benefit of reviewing this claim on a motion to dismiss the second amended complaint, confronts several layers of confusion for the first time at the evidentiary stage.  The plaintiff asserts what looks like a sex discrimination claim based on the evidence, but she also specifically states that she pursues only her sexual harassment claim, not her discrimination

*B.*

To recover on an IIED claim in Louisiana, a plaintiff is required to show that (1) the defendant's conduct was extreme and outrageous; (2) the plaintiff suffered severe emotional distress; and (3)"the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991).  An IIED claim is not proper when the wrongdoer intends to commit another intentional tort, invasion of privacy for example, but incidentally causes some degree of emotional distress.  See Restatement (Second) of Torts § 47 (1965); White, 585 So. 2d at 1209 (adopting an IIED cause of action in Louisiana "generally in accord with the legal precepts set forth in the Restatement texts and comments."). The conduct requirement in an IIED claim is difficult for a plaintiff to meet; the standard does not reach "mere insults, indignities, threats,

---

claim.  This claim's unclear nature may stem from the fact that the plaintiff tries to couch her sex discrimination claim as a sexual harassment claim, and it does fit that framework well.  Maybe she does so believing that she cannot meet the elements of a sex discrimination claim.  In its original motion (before the plaintiff dropped her discrimination claim) Entergy attacks, for example, the plaintiff's ability to show adverse employment action on the basis of sex, contending that any such action was taken only after the plaintiff was disqualified from flying because of the psychological testing results.  The plaintiff has repeatedly stated, however, that the permanent grounding and the exams Entergy had her undergo were tantamount to termination and ruined her career.  Because of this distinct (and perhaps unique) fact pattern, material facts remain in dispute.

annoyances, petty oppressions, or other trivialities," but, rather, the behavior must "go beyond all possible bounds of decency, [and must] be regarded as atrocious and utterly intolerable in a civilized community." Id.; see also Iturralde v. Shaw Grp., Inc., 512 Fed. Appx. 430, 435 (5th Cir. 2013) ("Under Louisiana Civil Code Article 2315, plaintiffs must meet a high burden of proof to prevail on an IIED claim.").

The defendant contends that Entergy's conduct is so not severe and outrageous as to support a claim for IIED. This Court recognizes the high bar for IIED claims in Louisiana. Compare Smith v. Ouachita Parish Sch. Bd., 702 So.2d 727 (La. App. 2 Cir. 1997) (holding that the wrongful demotion and transfer of a teacher within the school system, though causing emotional and psychological distress, did not constitute extreme and outrageous conduct); Glenn v. Boy Scouts of America, 977 F. Supp. 786 (W.D. La. 1997) (telling an employee that she was rumored to have had a sexual affair with a prior scout executive, being told that her placement next to a donor who liked her was because she might get more money from him, telling her that having a woman in her position was undesirable, being called a total disgrace during a staff meeting, and being told she would be terminated on an undisclosed volunteer complaint unless she voluntarily resigned, did not constitute extreme and outrageous conduct) with Bustamento v. Tucker, 607 So. 2d 532 (La. 1992) (finding sufficiently

outrageous almost daily improper sexual comments and advances, threatened physical violence, and an attempt to run over the plaintiff with a forklift).  This Court previously dismissed the plaintiff's IIED claim against Oliver Trowbridge, Entergy's former corporate aviation manager.[11]  There, the only conduct at issue was his sending the letter to the FAA, speaking with Dr. Rabito, grounding the plaintiff, and assigning her to certain administrative duties.  The Court found that these circumstances in isolation did not amount to extreme and outrageous conduct.

    The episode as a whole, however, creates genuine issues of material fact as to its outrageous nature.  Unlike the abuse of right claim discussed below, the plaintiff's IIED claim does not focus solely on an investigation that Entergy conducted out of possible concerns for safety and liability and based on the plaintiff's own complaints.  Rather, the IIED claim finds its genesis in the supposed sabotage by Leon, Currier's co-pilot during the Bombardier training.  The Court is unaware of, and the parties have not identified, a case that applies to the particular fact pattern here.  Arguably, on the present record, Currier was not simply fired, and any wrongful conduct by Entergy did not lead to her loss of only that one job; it destroyed her career.  If a fact finder were to deem Currier more credible than the Entergy employees, that would mean that Entergy concocted a plan to destroy

---

[11]See Order and Reasons, dated November 19, 2014, at 12-14.

Currier's career–whether or not rooted in sex discrimination–and this could be deemed sufficiently severe and outrageous as to allow recovery for intentional infliction of emotional distress. These issues are patently trial-based. These fact-intensive and credibility-based questions are more aptly suited for a fact finder than for the Court on summary judgment.[12]

C.

The doctrine of abuse of right applies "only when one of the following conditions is met: (1) if the predominant motive for it was to cause harm; (2) if there was no serious or legitimate motive for refusing; (3) if the exercise of the right to refuse is against moral rules, good faith, or elementary fairness; (4) if the right to refuse is exercised for a purpose other than that for which it is granted."  Mass. Mut. Life Ins. Co. v. Nails, 549 So.2d 826, 828-29 (La. 1989).  In other words, and perhaps more useful here, "the holder of an individual right must exercise that right to the detriment of another simply for the sake of exercising it." Brumley v. Leam Investments, Inc., No. 09-1078, 2012 WL 525474, at *19 (W.D. La. Feb. 16, 2012).

Currier claims that Entergy abused its right to investigate her complaints.  But nothing infers that Entergy undertook an investigation, based on the plaintiff's complaints, without <u>any</u>

---

[12]Entergy's intent is inherently a fact issue, subject to a credibility determination at trial.

benefit to itself, and <u>merely</u> to cause harm.  See <u>Jones v. New Orleans Legal Assistance Corp.</u>, 568 So.2d 663, 668-69 (La. App. 4 Cir. 1990).  Currier's area of work obviously implicates public safety concerns.  Nothing of record instructs that Entergy initiated an investigation into Currier's complaints without any benefit to itself.  Rather, Entergy hired an independent investigator to look into her complaints for the sake of the safety of its employees and passengers and to protect itself from liability.[13]

According, the defendant's motion for summary judgment is GRANTED as to the abuse of right claim, and DENIED as to the sexual harassment (or sex discrimination) and IIED claims.  The abuse of right claim is hereby DISMISSED.  The plaintiff's claims for intentional discrimination under the ADA, retaliation, and fraud, which she no longer pursues, are DISMISSED.  Her sexual harassment/sex discrimination and IIED claims are the only pending claims that remain for resolution by way of trial or settlement.[14]

New Orleans, Louisiana, December 18, 2014

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[13] <u>See</u> Order and Reasons, dated November 19, 2014 (dismissing the civil conspiracy claim against Griffith, the outside investigator).

[14] Finally, given how both sides have dealt with this case, the Court is obliged to call attention to 28 U.S.C. § 1927.